You'll hear argument next in Case 23-12-70, Riley v. Bondi. Mr. Bradley? Mr. Chief Justice, and may it please the Court, a sensible scheme of judicial review would provide a right to review on a petition properly filed, particularly on matters of life and death where errors left uncorrected are so contrary to the fundamental policies of the United States. But it also would not have the courts routinely intrude while the agency is still doing its work. When the agency is deliberating where a noncitizen can be sent, in light of an objection duly raised in the ordinary processes, that work is ongoing. Amicus' proposal would mean that a noncitizen-like petitioner is allowed to seek a court's decision on withholding issues that the agency has barely begun to assess. The INA does not suggest that Congress intended that surprising result. Instead, the statute is consistent with common sense. Regarding jurisdiction, Santos-Zacharia already explained that Stone was not a holding on that point. The Court should adhere to what it said there. And certainly 1252b1 does not rank as jurisdictional under the modern rubric. I welcome the Court's questions. Did Petitioner seek a review of the removal order? We are not seeking a review of his removability. We are seeking a review of the CAT decision, Your Honor. But the only jurisdiction we have is over the removal order. I think that's – I would question that premise, Your Honor. Or a final order, excuse me, a final order. The court – the statute allows the court to conduct review within 30 days of a final order removal. But it also clearly says the court has jurisdiction to review a CAT order, as the court explained to Nasrallah already. Have we ever said that you could do that independent of the final order? Not independent in the sense – and that is exactly the problem, Your Honor. I think that the sensible approach is to wait until the agency has concluded all of its work, and then you have one petition that encompasses removability, the order of removal, and the CAT questions. Does the CAT question then convert the final order into a broader final order by attaching itself to that? I think what Nasrallah teaches us, like certainly, is that it does not convert the – a CAT order that says that – that denies CAT relief is not converting the final order into something else, except from the timing of it and what gets decided is affecting the finality. Because as we explained in the brief, and I believe the government agrees, where you can be sent is something that remains to be decided. The removal order under the government's regulations has to tell you where you're going to be sent. You have an opportunity to object right then. If the process results in that being – that where not working, then they're going to tell you where else, and then you might proceed into another. So it does not affect the removability. So do you have – what's your best textual hook for that? I'm sorry, for which? For your argument that the CAT order has to be – it can expand the time limit of the final order. So it turns on what final means, Your Honor, and the statute we submit, obviously it explains what makes something final in certain circumstances, and aside from that, it's a word that this Court has interpreted in many contexts to mean that the agency's decision-making is full and complete on all issues, that the agency has dissociated itself from the decision-making process. That's the word final. One definition in the statute, at least the courts on amicus' side, argue or concede that the one issue that defines finality is when the Board concludes its work, correct? When the Board concludes its work. That is correct. And here, when the Board concludes its work, as you know, is – Is after the CAT, because the CAT decision can change the final order, correct? Correct. Because it will change – the final order says you are removable, you're going to X country, and the CAT order will say no, make it Y country. So there is an amendment. There is an amendment. So this is almost like a conviction in a sentence, meaning the conviction is final in a district court until you appeal it, but you wait for the sentence for the appeal because you want the court to finish with everything at once. I think you have it exactly right, that analogy. And Nasrallah was familiar with that analogy, of course. That's the one it gave. That's the one in Nasrallah. Now, Congress does use the word administrative in a different provision, the detention provision. Correct. So there they said when an order is administratively final, meaning when the agency has finished on this particular question. But it uses a different word, final order removal, here. That difference, how does it play into your argument? That difference, I think, is good support for us. In that, administratively final, presumably the administratively means something. It points us to that that moment is a different moment from the moment when the order is final for purposes of judicial review. Therefore, we would expect, not necessarily in every case, but we would expect that conceptually administratively final is different from final. And so that point that Guzman-Chavez pointed out, when detention can begin because one issue in the case has been resolved, is different from the case point when everything is finished, when the agency is fully finished with its work. That's final for judicial review. On the 30-day deadline, do you understand our position to be that we're never going to find a jurisdictional bar again? Certainly not. I think that there may well be one out there. I have not canvassed the U.S. Code, but the court has been, has demanded something very clear from Congress to indicate that a time bar is jurisdictional. And there's nothing more here than the others that have not been jurisdictional. Well, I mean, there is the fact that they applied equitable tolling in the prior, the Stone case and said equitable tolling was not available, which sounds like something you would say if you're dealing with a jurisdictional provision. It referenced our limitations on certiorari and time to appeal, which everybody agrees are jurisdictional, I guess, until the next case comes out. But at least now everybody agrees that they're jurisdictional. I mean, is it really a magic words case that statute has to say, and this is jurisdictional? If I, so I'm going to take that in two parts if I could. First thing is about whether this is a magic words case. I think if you look at everything in 1252 and the entire context, there are many, many clues that this particular deadline is not jurisdictional. They said jurisdiction when they meant it, and they did not in B-1. In addition, they removed particular wording that was in the pre-1996 IRA that gave a specific point in time that is less clear under the amendment. So there are these textual clues. But the second thing is to go back to your observations about Stone. Whether the equitable tolling could be available is in, Stone's an excellent example of something that mentioned that in passing and made no difference to the case. No one had asked for equitable tolling. What was asked for was a concept of non-finality that is just as available for jurisdictional as for non-jurisdictional deadlines. Mandatory claim processing, which are non-jurisdictional, you can't equitably toll either, correct? Also true. Counsel, I just want to explore whether there's any daylight between your position and the government's position here. And one area that I wondered about was whether you think the CAT order itself is a final order of removal. Pages 47, 48 of your brief kind of venture into that territory, whereas the government would say no, the final order of removal is the 1228 FARO, but it doesn't become final until after the CAT resolution. So which is it? So I would say that there is a millimeter of deadline that will not matter. So let me explain that. We agree that the FARO is an order of removal. We agree with the government that that order of removal became final upon the conclusion of all of the administrative proceedings, when everything related to it was resolved. It seems to us also that the board's order was also an order of removal that was, of course, final at the same time, but you don't need to decide on that. That worries me with Nasrallah a little bit. If we were to say the CAT order is a final order of removal, that seems to me to run headlong into Nasrallah, but the government's theory doesn't. The government's theory does not, I agree with you, and we share that theory as well. We think that the FARO was an order of removal that became final upon the completion of the proceedings. Is there any other daylight between you and the government in this case? I can't think of any. Oh, actually, sorry, one more, which is that also not really before the court, which is that we think that the 30-day deadline is not, is, we agree that it's non-jurisdictional. We think it's not mandatory either, but that, no one is asking the court to decide that particular question. Going back to Justice Thomas' question about textual basis for your position, are you relying at all on the zipper clause, 1252B9? Yes, we certainly are, because that is a sign that what we in the government are asking for is the sensible way to proceed. It is very clear that Congress intends for there to be judicial review of CAT claims, and the zipper clause is telling you that everything should come up in one petition. And how is that to be done? That is to be done by interpreting final to mean when the agency is fully concluded with its process. And you're getting your proposition that there's supposed to be judicial review of CAT claims from 1252A4? Correct. Which, of course, at least we read Nasrallah to have looked at that provision and concluded that Congress did indeed intend judicial review of CAT claims. You've referred to common sense and a sensible way to proceed. Do you think that's a characteristic that can be found in our recent related immigration decisions? I'd rather not comment on that if I could avoid it. Let me ask you. The red light is on. But common sense is always the goal, I think, Your Honor. Justice Thomas, anything further? Well, I see the red light won't save you from my other question. Why don't we just say it's a magic words test? You know, unless Congress says it's jurisdictional, then it's not jurisdictional. These cases are endlessly interesting, and they fill up our docket. But I don't know what statutory provision that doesn't have the magic words will ever be held to be jurisdictional. Can you think of a possibility? Well, we know three, of course, Your Honor, 1291. They have a historical pedigree. Exactly. I cannot speculate to how Congress might write a statute that would do that, but I would reiterate this particular one, given the structure of the statute and the way the jurisdictional is used elsewhere in the statute, this deadline is a straightforward one to conclude it's not jurisdictional. This statute is as clear as you can be. Some provisions say there's no jurisdiction.  This one doesn't. Correct. Exactly. And if Congress needed education, it certainly has enough opinions that say just say it's jurisdictional and tell us that no other further relief can be given, correct? Agreed. All right. Ms. Kagan? Justice Gorsuch? Do we have no? Justice Berman? Justice Jackson? Thank you, counsel. Mr. McDowell? Thank you, Mr. Chief Justice, and may it please the Court. On the first question presented, the 30-day filing deadline in Section 1252b1 is not jurisdictional. That provision fails this Court's clear statement test, and Stone is not a binding jurisdictional ruling. On the second question, the petition here was timely because it was filed within 30 days of the Board's CAT order. In Section 1252a4, Congress provided for judicial review of CAT claims, and Nasrallah confirms that courts may review CAT orders together with removal orders. It follows that a CAT order becomes final at the same time as a removal order, so that challenges to both orders can be raised together in the same petition for review. Under Amicus's position, many CAT claims would be unreviewable, but when Congress wanted to preclude judicial review in the INA, it did so expressly. It is unlikely that Congress would have precluded review of many claims indirectly by way of a generic 30-day filing deadline. I welcome the Court's questions. Can you give us an example of an instance in which a claim B can be considered with, or Appeal B can be considered with Appeal A, but Appeal B actually expands the time limit for Appeal A? I think the best analogy is the one that Justice Sotomayor pointed to, which is that a conviction cannot be appealed until after the sentence, even though the sentence doesn't affect the validity of the conviction or merge into the conviction. Okay, let's try the civil context. Can you think of any other provision? I suppose there, the way it would work in a remedial scheme, remedial decision as opposed to a liability decision, the remedial decision wouldn't affect the liability decision, but we would still, under the final judgment principle, not allow an appeal of the liability ruling until after the remedial decision is done. And I think the same basic logic applies here, because as Nasrallah points out, a CAT order does not affect the validity of a removal order, but our position is that the removal order doesn't become final until the end of CAT proceedings, because that's when the agency has finished its work on the case and disassociated itself from the case, which is the basic final judgment principle that always applies in judicial review in the courts of appeals. Mr. McDowell, can you give us some examples of, you say that adopting Mikas' view would leave certain CAT orders unreviewable. Can you give us some examples? So I think under his position, I think the CAT order in this case would be unreviewable, because Petitioner didn't file the petition for review within 30 days of the Section 1228 removal order. I think your friend, though, in this case would say, well, he could have done. So our point is that if you're referring to the premature protective petition scheme idea, I think that there are two potential legal problems there. One is the zipper clause, which contemplates a single petition for review at the end of the case, whereas the premature filing of a petition supplemented by a later filing related to the CAT claim, I think runs counter to that idea. I also think that if the Court were to adopt Mikas' reading of the statute, one potential upshot of that is that Congress intended to foreclose review of these claims. And if Congress wanted to foreclose review of these claims, we don't see how courts and litigants could adopt a workaround scheme to get around that. But obviously our frontline position is that Congress did want review of these claims. I think your friend on the other side would say, well, they can file these protective appeals and courts of appeals can hold on to them, and then when the CAT order matures, you're good to go. Would courts of appeals have to keep those notices of appeal on their docket? Is there a risk they might dismiss them? I'm just not sure. I've not held a notice of appeal on my docket as an appellate court judge on the Tenth Circuit for, what, a year, two years while the CAT order is ongoing. I just don't know. I haven't encountered that. I think this points up another problem with this idea, which is that I don't actually think it's a particularly effective way of preserving judicial review because these procedures lie within the discretion of the courts of appeals. And so some courts of appeals may deny a motion to hold a case in advance. So I think we would end up with a patchwork system where some circuits are generally preserving review of these claims, others are not, and there might be even variation within circuits. We also see some other practical problems with the system. One is that it leads to a flood of meritless prophylactic petitions, which really aren't challenging the removal order itself. They're just a placeholder for a later decision that may actually go in the alien's favor. The second problem is that it creates a trap for the unwary, because many people in the system are unrepresented and won't know that they have to file this sort of counterintuitive protective petition. And then, finally, it does create administrative burdens for the courts and for the government. And what we've seen in practice is that many of these protective petitions end up being abandoned at the end of the day because the person gets withholding relief or because they just don't want to pursue the petition. So it really is just a waste of resources in many cases. Could I speculate and say, you're right, if we accept Amicus's argument, basically CAT orders won't be reviewable in those places where the courts don't want to stay. The appeal of a petition for removal, that would happen for aggravated felons, and some people might say, well, that's a good thing. Congress didn't want them to delay deportation any longer than necessary. So I could see some people saying, don't worry about those guys, okay? But doesn't the board, in a fairly significant number of regular asylum cases, regular petitions for removal where the person's not an aggravated felon or someone else who's done something other than be here illegally, doesn't the board often split those decisions? It does. It does, Justice Sotomayor. So it affirms the petition for removal. Yes. But it remands. That's correct. For the CAT claim. Yes. And under Amicus's position, those people who are not aggravated felons, those people then are deprived totally of the zipper clause, correct? That's right. And if I could just make two points in response to this idea. The first, as to your initial premise about aggravated felons, I do think that if Congress wanted to preclude judicial review of CAT claims for aggravated felons, it would have said so expressly. That's what it did in Section 1252A2C when it precluded aggravated felons, raising factual challenges to removal orders. But as to this mixed decision idea, which we raise on pages 38 to 39 of our opening brief, you have it exactly right. I think the upshot of Amicus's reading of the statutory definition would be that there would be no review of the agency's withholding decision on remand. And again, that would be in an ordinary removal case outside of the expedited removal context. Judge Murphy's concurrence in the Sixth Circuit decision that we cite flags this exact issue and says that this is a potential spillover consequence of reading Nasrallah and the statutory definition quite broadly, as Amicus is doing here. On the first point, you seem to be suggesting that there's some kind of clear statement rule before Congress would deprive judicial review of CAT claims. I'm just wondering about the origins of that or if that's what you're saying. I didn't mean to be suggesting a clear statement rule. It's a structural point about the INA. In the INA throughout the statute, when Congress wanted to preclude review of categories of claims, we see it over and over that it does so with express language. And here, Amicus is not pointing to any express language precluding review of CAT claims by aggravated felons. Instead, he's pointing to what is really just a generic 30-day filing deadline as a way of arguing that Congress indirectly or implicitly precluded judicial review of these claims. And I just think that as a structural matter, that's hard to square with the INA, its context and its structure. And haven't we also said in Guerrera-Lasria that there's a presumption of judicial review that, you know, we not foreclose the possibility of judicial review over agency action unless there's clear and convincing evidence that Congress intended that result? That's right, Justice Jackson. We don't think you actually need to get to the presumption in this case because we think the statutory structure and the context are sufficiently clear to show that Congress wanted review of these claims, particularly Section 1252A4, which is what I referenced in my introduction. But we don't deny that if the statute were truly ambiguous, that the presumption would apply here. We just don't think you need to get to that here. And just to get back to the Section 1252A4 point, Justice Thomas, that is expressed as textual evidence that Congress wanted there to be judicial review of CAT claims. And I think it stands to reason, and then we also have Nasrallah, which says that CAT orders are reviewable together with removal orders. And so I think it really does stand to reason that a CAT order must become final at the same time as a removal order so that a person can consolidate challenges to both orders into the same petition for review, which is what the zipper clause contemplates. Another way of seeing the same point is that it's unlikely that Congress would have given expressed textual evidence that CAT claims are reviewable, but at the same time written a deadline so short as to render many of those claims unreviewable. Normally Congress doesn't give with the one hand and then take with the other in that sort of manner. Under your position, is it the case that an order that is final is rendered non-final by the filing of the subsequent application? No, that's not our position. Our position is that when a person has a withholding-only claim, the Section 1228B removal order does not ever become final until the withholding-only claim is resolved. It's not that it is final and then becomes non-final. It's that it never became final in the first instance until those proceedings are  And that's because — Okay. What is the time requirement for filing a withholding-only claim? The regulations contemplate that the claim is raised with the agency before the Section 1228B removal order is issued. And here it was raised immediately after. So if there were a situation where a person didn't raise it for 30 days after the entry of the Section 1228B removal order, we would agree that at that point the order would be final and the petition for review timeline would have run. But here, and as is usually the case under the regulations, these claims are brought contemporaneously with the entry of the Section 1228 removal order. The problem is that the resolution of those claims takes much longer because these are often very fact-intensive claims, as opposed to a Section 1228B removal order, which has very little process because it's meant to be expedited. And how long do you know, by any chance, how long on average it takes to resolve CAT claims? We don't have exact numbers, but my sense is it usually takes several months if it's a serious claim. If it's a meritless claim, these can be resolved fairly quickly because the asylum officer will say that there's no negative or there's no reasonable fear. Then the immigration judge will sustain that. And both of those officers have to make those decisions within a 10-day span. So they can sometimes be resolved relatively quickly. But here, when it's a serious claim, here the IJ actually found that he was entitled to CAT relief and then that was reversed by the BIA. When it's a serious claim like that, it can sometimes take several months to even over a year. The dissent in Guzman-Chavez pointed to some instances where they took multiple years, I believe. So in light of that, as between these two options, which one is preferable and why? The first would be the requirement that a prophylactic petition for review be filed, and the second would be your position that there's no need to do anything until after the CAT claim is resolved. Do you think that there's a risk that your position would lead to greater delay? I don't think it would lead to greater delay because people are going to have incentives to bring these withholding-only claims no matter what because they can always bring the claim before the agency, and the removal order will be stayed pending the agency's resolution of the claim. So these claims are going to be brought either way if there's a plausible reason to bring them. The only additional delay under our interpretation versus amicus' and I'm setting aside the protective petition scheme, which I've already discussed, but the delay here would be the time needed for the Court of Appeals to review the withholding-only determination. I also want to just point out in terms of any public safety concerns about giving this additional time or additional process to aggravated felons, it's important to bear in mind that they can be detained throughout the entirety of the agency proceedings as well as subsequent judicial review proceedings, and this Court affirmed that power in Guzman-Chavez. So just as a matter of government practice, when you have the order of removal but the CAT proceedings have not yet been concluded, what does the government feel itself free to do with the alien? So the removal order would be stayed as to the designated country of removal, so we would not be able to remove the person to that country. There is this issue of third-country removal, and in that circumstance I want to first point out that under Title VIII, DHS does not pursue third-country removal while the withholding-only proceedings are ongoing. But if it were to, the way it would work is this. So let me make sure I understand that. You think you have the legal right to send the noncitizen to some other country where he doesn't have a CAT claim, but in fact the U.S. government does not exercise that right. Under Title VIII, we do not do that as a matter of practice. We do think we have the legal authority to do that with the following caveat. We would have to give the person notice of the third country and give them the opportunity to raise a reasonable fear of torture or persecution in that third country. If they raise that reasonable fear, the withholding-only proceedings would simply continue. They would just focus on the new country rather than the original one. But you don't have the legal power to remove the person to the country for which there is a pending CAT claim. That's exactly right. The regulations prohibit that, and that's another reason why we think that confirms that the removal order doesn't actually become final until the end of withholding-only proceedings. The withholding-only proceedings affect the implementation of the removal order for that very reason. If a person is granted CAT protection, that means that the person cannot be removed to the designated country of removal. Thank you, Counsel. Justice Thomas, anything further? Would the party have to request consolidation with the removal order proceedings? Under our position, under our front-line position, no, because the removal order does not become final until the end of the CAT proceedings. Only after the CAT proceedings conclude would the person be able to file the petition for review. It would be exactly the way it works in ordinary litigation, where the appeal is filed after the entirety of the district court proceedings have come to a conclusion. That's what we're proposing here. So how would that work in this case? You have a removal order that's being appealed, right? A final order. So in this case, the petitioner brought his petition for review after the CAT order was issued. And we are saying that that was okay because the order of removal did not become final until the end of the CAT proceedings. So his petition here was timely because it was within 30 days of the CAT order. And the CAT order was what rendered the removal order final. Justice Alito? In this case, if we were to hold that the 30-day deadline is not jurisdictional, not jurisdictional but waivable, and if we disagree with you and accept the MECAS's second position, that a final order of removal is final when it's issued, regardless of the CAT, will the government honor their commitment to waive the deadline for Mr. Riley? Yes, we would. Justice Gorsuch? Justice Jackson? Thank you, counsel. Mr. Hammer? Mr. Chief Justice, and may it please the Court. Congress has barred courts from reviewing claims under the Convention Against Torture except on a petition for review of a final order of removal. Under Section 1252b1, such a petition must be filed not later than 30 days after the date of the final order of removal. The Fourth Circuit correctly held that Mr. Riley's failure to comply with that deadline meant it was jurisdictionally barred from reviewing his petition. The Fourth Circuit rightly recognized that the filing deadline is jurisdictional. This Court already held as much in Stone, which is a jurisdictional precedent in both reasoning and result. And Santos-Zachariah, which was focused on the INA's separate exhaustion provision, didn't disturb the deadline's jurisdictional status. The Fourth Circuit also correctly held that Mr. Riley's petition was untimely. The only order of removal in this case is the final administrative removal order. Section 1228b, the INA's statutory definition of a final order of removal, and Section 1231 all confirm that a final administrative removal order is, as its name indicates, final when issued. And as this Court explained in Guzman-Chavez, the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings. Because Mr. Riley failed to file his petition for review within 30 days of his final order of removal, the Fourth Circuit correctly dismissed it as untimely. I welcome the Court's questions. How do you respond to the arguments that have been made this morning that this expands the time for the removal order? I think that the statutory deadline requires filing the petition for review within 30 days of the final order of removal, and I think statutory text and context make clear that a final administrative removal order is final when it is issued. So what do you make of the argument that, you know, I asked the other side whether or not, what textual basis they had for this? And, of course, I don't think there's much, but would you address that? Your Honor, the only textual basis that this Court has recognized for judicial review of a CAT claim comes from filing a petition for review of a final order of removal in compliance with the requirements of 1252. Nasrallah explained that that allows the Court to review a CAT claim alongside a final order of removal, but if an alien does not file a petition for review within 30 days of the final order of removal, the Court does not – is not able to review the CAT claim. Well, you seem to be assuming that there is a final order of removal, but maybe it's not final until the CAT claim has been resolved. In other words, what this order of removal is saying, it has sort of two parts. First, you're removable, and second, we're going to remove you to country X. And that second part, which is within, you know, you're removable to country X, that's provisional. It's only country X if you fail on your CAT claim. So there's sort of like nothing final about a significant aspect of this order. So I disagree, Your Honor. Nasrallah made clear that CAT relief does not affect the validity of the order of removal and does not disturb the final order of removal, and Guzman-Chavez repeated all of that, making clear that withholding only does not affect the finality of an order of removal. And with respect to what the final order of removal here actually says, I would direct the Court to page 8 of the Joint Appendix, which says that Mr. Riley was ordered removed to Jamaica or any alternate country prescribed by Section 1231. So there wasn't any need – there wouldn't be any need for amendment. The alternate countries are already there, provided by the final administrative removal order, Your Honor. I don't understand your distinguishing Santos-Zacharia. It seems to me that if Stone's jurisdictional language was binding in the way that you claim, that it would have governed the outcome in that case as well, because both of them are in the same provision related to judicial review. So can you just help me to parse them in the way that you have done? Yes, Your Honor. I think Stone is a jurisdictional holding as to the filing deadline that it actually considered. I take Santos-Zacharia to be responding to the government's argument in that case, that the entirety of the INA's judicial review provision, everything in Section 1252, was jurisdictional, and Santos-Zacharia's comments were in reflection to that. But it was not – I don't take any of the comments in Santos-Zacharia to be saying that Stone was not jurisdictional in any respect, even with regard to the filing deadline that it did consider. If Santos-Zacharia had been saying that, it would not have needed to go on in that paragraph to point out that Stone did not address the exhaustion provision that was at issue in Santos-Zacharia. Well, true – it's true that Santos-Zacharia came up in a particular context, but it was responding to the assertion that Stone established the jurisdictional nature of this. And I thought Santos-Zacharia pointed out that Stone was a drive-by jurisdictional holding. It was pre-ARBAR. It really didn't do the work that was necessary to establish a binding holding related to the jurisdictional provision. So, Your Honor, I don't understand either of the comments in Santos-Zacharia to be saying Stone was not jurisdictional with respect to the filing deadline. You have the did not attend to comment in Santos-Zacharia. I understand that to be a reference to not applying ARBAR's clear statement rule. You have the was not central comment, and I think that is a reflection of the government's argument in Santos-Zacharia about the entirety of the INA's – All right, well, play out the counterfactual. If you're right that Santos-Zacharia was not talking about the jurisdictional nature of the provision that Stone was looking at, where does that leave Santos-Zacharia? Well, Your Honor, I think it could be a reflection on the entirety of the government's argument in that case that the entirety of the INA's judicial review provision far beyond the filing deadline was not jurisdictional. But even if I'm wrong about those comments, and those comments were meant to say that Stone was not jurisdictional in any respect, even with regard to the filing deadline that it did consider, I don't think that was necessary to the result in Santos-Zacharia. Santos-Zacharia was focused only on the separate exhaustion provision that was not at issue in Stone. And I think I would take the lesson from this Court's decision in Thrive to be that when the issue is what this Court held in a prior decision, this Court should look to that prior decision and not a subsequent opinion interpreting it. Mr. Hammer, can you think of another situation in which judicial review is precluded just by virtue of the way the fast track or the two-track system works? In other words, we're not looking at a situation – I mean, putting aside the zipper clause – but we're not looking at a situation where Congress has said expressly that in this situation where you have a fast track removal, judicial review is precluded. It's simply by operation of the fact that the removal order is going to have to be executed before the withholding claim gets all the way through. Is there another situation like that? So, two responses, Your Honor. First, I don't think judicial review of orders concluding withholding-only proceedings is precluded by the Fourth Circuit's reading. The parties have identified various ways by which aliens could obtain review of those orders and acknowledge – Well, let's assume – and the government's kind of disclaimed that now. So, let's – if those aren't – in this hypothetical, just assume those are off the table. Yes, Your Honor. If those are off the table, if those are not valid, then I think this is a unique form of judicial review. I'm not aware of another one that is like this that allows CAT claims to be reviewed but only if you file a petition for review of a final order of removal. So, I'm not aware of an analogy to it, but I don't think it would be surprising if Congress meant to restrict judicial review that it would do it for these particular classes of aliens, aliens who have been convicted of aggravated felonies and illegal reentrance. That would not be a surprising class given Congress's interest in expediting the removal of those aliens. Is that consistent with the presumption of judicial review? So, again, frontline position is that I think there are means available to get judicial review. Setting that aside, I don't think the presumption – I don't think the court needs to resort to the presumption given the plain meaning of the filing deadline. Would you say, then, that your argument maybe not hinges but is helped significantly by the available of these alternate routes? I think it is helped, but I don't – I think it's helped, but I don't think the presumption needs to be raised at all because I don't think the text is ambiguous with respect to what the meaning of a final order of removal is, Your Honor. But if your frontline position is that there is judicial review, even with respect to these people who are in expedited proceedings, if that's your frontline position, isn't it a quite odd way to write a statute to say, yes, you get judicial review, but we're going to set up a 30-day deadline, which effectively precludes you from ever getting that judicial review? Well, I think it wouldn't preclude you from getting the judicial review if these alternative means are available. It would just require you to file the protective petition and hold it in abeyance, which the government represents has been done in the Fourth Circuit since the decision. And I think this Court has been clear that administrative burden or complexity is not a reason to depart from the plain meaning of the statute. But I also think there was a good reason for Congress to do it this way, and I think this relates to the policy consequences of Mr. Riley's and the government's position. So Mr. Riley's and the government's position separates administrative finality on the one hand from finality for purposes of judicial review on the other. And by doing so, they create a risk that aliens can be removed from the country to a third country during withholding-only proceedings without ever having the chance to go into court and get a stay. That's a significant policy problem, and that's because, as everyone here agrees, the final administrative removal order is administratively final as soon as it's issued. That authorizes the government to remove the alien to a third country, so long as the government provides notice of that and the alien doesn't have a fear of persecution or torture in that country. But as long as withholding-only proceedings are ongoing, according to Mr. Riley and the government, there will not be a judicially final order, and so the alien won't be able to go into court and get a stay. That's a particularly significant problem because there will be cases in which aliens both want to challenge the validity of their 1228B orders and seek withholding relief, and those aliens will be put to a difficult choice. They will either need to forego their withholding proceedings so that they can immediately get judicial review and a stay of their 1228B orders, or risk it, go into withholding proceedings knowing that there's a chance they might be removed to a third country before ever having the chance to go into court and get a stay. That cannot happen on the Fourth Circuit's reading because the Fourth Circuit's reading marries administrative finality with finality for purposes of judicial review. I'm sorry. I thought that there was a stay for the petition for removal when a CAT claim is made within the 30-day period. There is not, Your Honor, and the government explained that, that the government believes itself and does in fact have the authority to remove an alien to a third country. To a third country, but they said, you forgot the subject to, subject to notice and an opportunity to file an amended CAT claim on the new designation, so it's not an open-ended thing. And you answered, Justice Barrett, by saying it makes sense that aggravated felons and people who have come back illegally shouldn't have more, have expanded appellate rights under CAT, but the government has conceded that people who haven't had either of those two situations, who have appealed to the board and are subject to the zipper clause in terms of the 30-day period, the board not infrequently affirms the petition for removal and remands the petition, the CAT claim. You're saying those people can't appeal either. Your Honor, I think that generally in those cases, aliens would have the opportunity to do it and that's because of the board's particular remand policy. So under a 1978 board decision called Matter of Patel, when the board remands a case, it's a general or plenary remand that allows reconsideration of any issue on remand unless the board makes a petition for review if they've affirmed it. It would allow for reconsideration of the removability decision by the IJ unless the board expressly limits the remand to that withholding issue. So to take your hypothetical, if the board did expressly limit its remand to the withholding issue, then yes, it's possible that scenario would arise. Well, that's how I saw it when I was on the circuit court, which is the boards would affirm the petition for review, I'm sorry, the final orders of removal, and remand just on the CAT claims. They did it routinely. So yes, Your Honor, the board has the option to expressly limit its remand to the withholding issue. I would just note that in these situations, aliens will also often be seeking asylum in addition to the withholding claim. And because asylum does go to the validity of the removal order, it would forestall the finality of the removal order while the asylum claim was being considered. Can I go back to Justice Barrett's question about the presumption? I guess I don't understand why the text of the statute is not ambiguous concerning the meaning of final order in the expedited removal context. When you look at the definition, both prongs of it are pegged to a determination by the Board of Immigration Appeals, which doesn't happen in the expedited removal context. So why couldn't that be a basis for determining that this was sufficiently ambiguous that the presumption kicks in? So two points, Your Honor. First, we don't think the presumption comes up so long as these alternative means of getting judicial review are available, like the protective petitions. I'm sorry. I thought the standard was whether the statute was ambiguous, not whether there's some other way we could figure this out. Well, judicial review would be available if you can file a protective petition, then judicial review would be available, so the presumption wouldn't help resolve anything. You'd get a judicial review. I think Justice Jackson's point is the presumption of reviewability helps us interpret statutes, and if the statute's ambiguous, then it kicks in. It has nothing to do with facts on the ground. You can achieve skin-the-cat some other way. You want to respond to that? Yes, Your Honor. This Court has said that when — this is Thunder Basin footnote 8. Because court of appeals review is available, this case does not implicate the strong presumption that Congress did not mean to bring in all forms of judicial review. Yeah, but if the statute — what do you say, though? I mean, it seems to me 1101A47, when it defines final order, really is pegged to the board's decision one way or the other, and here we have none. So, Your Honor, I acknowledge that Congress could have spoken more directly to this situation. Well, it could have spoken to this situation at all, right? Well, I think it could have spoken more directly. I'll acknowledge that, Your Honor. But I think it's clear in light of Section 1228B, which does speak directly to this So Section 1228B4F calls an order entered under that subsection a final order of removal using exactly the same language that Section 1252 does itself. And that's only confirmed by Section 1228B3, which imposes a stay or a bar on the removal of the alien for 14 days from the date of issuance of that order in order that the alien has the opportunity to apply for judicial review, confirming that that order is final when it is issued. And I think If we didn't have Stone, just to shift gears a little bit, would you read 1252B1 as jurisdictional? Your Honor, I acknowledge that the filing deadline likely would not satisfy the clear statement test apart from Stone. Just to mention the definition a little bit more, Your Honor, I think the best way to understand this, that is a statute-wide definition. It applies by its terms to the entirety of the INA, so it covers Section 1228B. And I think the best way to read it is to reconcile it with 1228B, particularly in light of the history of the two provisions. The predecessor to Section 1228B that originally dispensed with the need for a hearing before an immigration judge was adopted in 1994. DOJ adopted regulations implemented in 1995 that did away with the need for any board review. So by the time Congress came in EDPA in 1996 to add this definition, it already had this part of the statute. It already knew the statute called this a final order of deportation, and yet it adopted this definition. I think the best way to read it together with that is to reconcile it to say that the period for board review expires immediately when no board review is allowed. But if you disagree with me on that, I think Section 1228B itself answers this question, and it's strongly supported by Section 1231 and what this Court said about administrative finality in Guzman-Chavez. As the government acknowledges in its reply — What do you say about the possibility that some courts of appeals won't allow these protective appeals to sit on their books for years on end? Your Honor, I think this Court could provide guidance about the situations in which those motions for abeyance should be granted. The Court has done something similar in the habeas context in Rines v. Weber where it authorized a stay in abeyance procedure for district courts so that habeas petitioners could go into district courts and exhaust their — go into state court to exhaust their claims before coming back. This Court could authorize something like that. I don't think that's necessary here, Your Honor, because I think the meaning of the filing deadline is plain, but the Court could provide guidance in that way. Counsel, you say that Stone's rejection of tolling indicates that it's true jurisdictional holding, but tolling can be unavailable in equitable proceedings as well, can't it, when the deadlines are equitable? Yes, Your Honor. It is true that some claim processing rules also foreclose tolling, but they don't do it in the way that Stone did. So this Court in Irwin held that non-jurisdictional statutory deadlines are We see nothing like a rebuttal in Stone of that presumption of equitable tolling. Instead, we see the automatic and reflexive connection of the Court's holding that the deadline is jurisdictional to the consequence that it doesn't allow for equitable tolling. That's the exact opposite of what happened in Begerle, the case that this Court analyzed in Wilkins and said didn't count as a definitive jurisdictional precedent. It had an extensive analysis of equitable tolling, and the Court said if it was a true jurisdictional deadline, it wouldn't have needed that extensive analysis, and that's exactly what we have in Stone. A direct and immediate connection between the conclusion that the deadline is jurisdictional and the consequence that it doesn't allow for equitable tolling. Well, you also argue that the citation of the cert deadline and the appeal deadline is very, very significant here. But those seem to be quite different in the sense that you're dealing with vertical deadlines of quite some significance. And I wonder whether that is a particularly compelling analogy. Your Honor, I think it was the analogy that the Court found compelling in Stone. It was the analogy that supported the Court's ultimate conclusion that the deadline was jurisdictional and engaged in this extensive analysis, comparing the deadline to file a notice of appeal from a final order of deportation to the time to notice of an appeal from a district court judgment, which, as you point out, this Court has recognized as jurisdictional both before and after Arbaugh. The Court also compared the effect of the motion for reconsideration to the effect of a Rule 60B motion, which doesn't strip the Court of Appeals of  And I think the force of that analogy is that it shows the Court understood the filing deadline as a window of time in which the Court of Appeals could assert jurisdiction, regardless of any motion for reconsideration, and after which it could not assert jurisdiction, just like in the notice of appeal context. I think all of that analysis supported what happens on page 405 of Stone and shows that the Court truly meant what it said when it said that the deadline was jurisdictional. But just to underscore Justice Gorsuch's point, under our modern jurisprudence you would agree that it's not jurisdictional, that you're relying on the Stone precedent as the reason why we should hold that it's jurisdictional here. I am relying on the Stone precedent, Your Honor, and I think this is exactly the situation in which statutory stare decisis has its effect. As this Court recognized in John R. Sand and Gravel, abiding by this Court's stability and predictability of the law, and it's particularly important here because just a year after Stone, Congress and IRIRA further restricted the availability of judicial review. And we can rely on Stone to reach the jurisdictional holding that you would like us to reach, notwithstanding Santos-Sicario's statement that Stone, in Stone, whether the provisions were jurisdictional were not central to the case. Yes, Your Honor. I don't understand that statement to be reflecting on Stone's analysis of the deadline to the extent I'm wrong about that. I don't think that was part of Santos-Sicario's holding. I don't think it would bind this Court, just like in the Thrive case, Your Honor. Mr. Hammer, when I asked you before why we should think of the order of removal as final, given that it's distinctly non-final, distinctly provisional as to an important aspect, which is where you're going to remove the person to, you think, look, that's what Nasrallah forces you to do, is to think of that order as final, even though it's not final, as to where the person can be removed to. Is there anything else other than Nasrallah? Yes, Your Honor. I think it's a strong point that this order allows the removal, even while withholding only proceedings are ongoing, of the alien to a third country. The order does not have to be amended. Well, it does. So it has settled the question of whether you can remove the alien to, you know, any other country, but it has not settled the question as to whether you can remove this person to Jamaica here. So that continues to be an up-for-grabs question. And as I understand the government's argument, it's like as long as that's an up-for-grabs question, the order is not final. Now, you come back and you say Nasrallah, so I take the point. We have to now go read Nasrallah and see what it said and what it didn't say. But I'm not hearing anything else from you. Your Honor, no. I think the statutory text itself. So we talked about 1220AB and the clear indications that that order is final when issued. 1231 also confirms that.  What in that tells you it's final is issued? It's called a final order of removal. Well, the question is what is a final order of removal? Okay. So Section 1220AB3 indicates that you can seek judicial review within 14 days of the issuance of the order, which would not be possible if withholding only proceedings suspended the finality of that order. So I think that's a strong indication that it's final. But I would also point to Section 1231 and what this Court said about administrative finality in Guzman-Chavez, because many of these arguments were also raised in Guzman-Chavez, that indeterminacy as to the where question suspended the finality of the removal order. And the Court rejected that for purposes of administrative finality in Guzman-Chavez. I think there's a strong presumption that also governs finality in Section 1252. And we can see evidence of that in the statutory text in Section 1252B8A, which cross-references Section 1231 and uses the words a final order of removal to indicate the beginning of the removal period under Section 1231. So Congress is using these two terms interchangeably. And for the reasons we discussed, it makes sense for them to do so, because administrative finality is the point at which the alien is then put at risk of being removed to a third country. It doesn't make sense to have judicial finality for purposes of judicial review be suspended for some period of time while the alien is at risk of being removed to a third country. Thank you. Thank you. Justice Alito? Anything further? Justice Gorsuch? Justice Kavanaugh? All right. Thank you, Counsel. Mr. Bradley, rebuttal? Thank you. A couple of observations, really three things I'd like to say. One is on the question whether somebody can be removed to a third country, and a third country while the withholding proceedings are in process. I'd like to point the Court to the regulation at our appendix 29A in the petition that says such alien shall not be excluded, deported, or removed before a decision is rendered on his or her asylum application. And that term is defined in the regulation to include the withholding claims. So it is, as the government and we have said, that while they have the statutory authority to remove you to somewhere else, the actual administrative process is that by their own regulations they cannot unless they find another, they designate another country. This is actually 20A in the appendix, that they must designate the country of removal and then give you another chance. If that's a third country, you might raise an objection as to that one. By contrast, in the judicial process, of course, there is no automatic stay. This was a change in IRIRA. We have a stay in this case, but that is within the discretion of the circuit courts. I'd like to come back to 1228B3. This is the provision that says that there is a pause for 14 days. That has a great deal of force in a case where there is no withholding claim. But there is nothing about that provision that shows it was intended to cover every case. It is a limited protection of limited benefit for certain circumstances, not all of them. Third, I'd like to come back to this question of the protective petitions. It is more than simply that the courts would have to hold them in abeyance. The government is right about the volume, that you will have to petition in every case because you won't even know yet what the IJ's or BIA's decision will be and whether there will be grounds to challenge it. In addition, you'll have to be filing a petition in response to which the government is supposed to file the administrative record for a case that is still ongoing and you're still building the administrative record. So the headaches for doing this nationwide are contrary to any other judicial review scheme that I can think of. Thank you, counsel. Mr. Hammer, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility for which we are grateful. The case is submitted.